UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARVIN C.,[1] | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:23-CV-212-ACL |
| LELAND DUDEK,<br>Acting Commissioner of Social Security<br>Administration,[2] | ) ) ) ) ) |
| Defendant. | ) ) |

# **MEMORANDUM**

Plaintiff Marvin C. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions.

[2] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

## I. Procedural History

Plaintiff filed his application for benefits on March 22, 2019. (Tr. 234-42.) He claimed he became unable to work on March 22, 2019, due to short-term memory loss, daily headaches, chronic pain, arthritis, left foot pain, difficulty walking, chronic knee pain, chronic hip pain, sleep issues, comprehension issues, and vision issues. (Tr. 275.) Plaintiff was 50 years of age at the time he filed his application. (Tr. 27.) His application was denied initially. (Tr. 174-78.) On November 17, 2022, after a hearing, an ALJ found that Plaintiff was not disabled. (Tr. 15-28.) The Appeals Council denied Plaintiff's claim for review. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the ALJ "failed to create an RFC supported by medical evidence of [Plaintiff]'s ability to function in the workplace." (Doc. 12 at p. 5.) He next argues that the ALJ "failed to evaluate the joint medical opinion of Diane White, M.A., and Steven Adams, Psy.D., in the manner required by the regulations governing the assessment of medical opinions." *Id.* at 10.

## II. The ALJ's Determination

The ALJ first found that Plaintiff has not engaged in substantial gainful activity since his March 22, 2019 application date. (Tr. 18.) Next, the ALJ concluded that Plaintiff had the following severe impairments: obesity, osteoarthritis of the bilateral knees, fibromyalgia, and

migraines.  *Id.*  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 20.)

      As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following restrictions: The claimant cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, kneel, crouch, and crawl.  The claimant can occasionally push or pull with the lower extremities.  The claimant should avoid concentrated exposure to vibration, "loud" noise, working around bright and focused lighting such as in an examination room or in direct sunlight; should avoid hazards such as unprotected heights, or dangerous moving unguarded machinery.

(Tr. 22.)

      The ALJ found that Plaintiff was unable to perform any past relevant work, but could perform other jobs existing in significant numbers in the national economy, such as router, marker, and collator operator.  (Tr. 27-28.)

      The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on March 22, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 28.)

### III.  Applicable Law

### III.A.  Standard of Review

      The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).  The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First,

the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists

in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Plaintiff challenges the ALJ's evaluation of the medical opinion evidence and RFC determination as to both his physical and mental impairments.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The claimant has the burden to establish RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The RFC need only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006). The Court recognizes that an ALJ "may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). However, the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry*, 815 F.3d at 391 (citation omitted).

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1)

supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision.  20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.*  An ALJ may, but is not required to, explain how he or she considered the remaining factors.  *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted).  An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

### *Physical Impairments*

Plaintiff first argues that the ALJ's physical RFC determination is not supported by

medical evidence of Plaintiff's ability to function in the workplace.  He states that he applied for disability benefits when he became physically unable to continue working as a repairman due to a combination of osteoarthritis of both knees, fibromyalgia, and obesity.  Plaintiff contends that, in determining his physical RFC, the ALJ rejected the opinion of treating physician, Joseph Marino, M.D., and relied on his own inferences.

Dr. Marino completed a Medical Source Statement-Physical on September 6, 2022. (Tr. 694-96.)  Dr. Marino listed Plaintiff's diagnoses as: fibromyalgia, osteoarthritis, migraines, chronic knee pain, chronic pain syndrome, and Rocky Mountain Spotted Fever.  (Tr. 694.)  As to Plaintiff's symptoms, Dr. Marino stated that Plaintiff experiences chronic daily pain, chronic headaches, poor balance with falls, fatigue, and numbness and tingling of the upper extremity. *Id.*  He described Plaintiff's pain as "chronic daily persistent pain" in the neck, back, and knees. *Id.*  Dr. Marino indicated that Plaintiff's medications result in side effects of drowsiness and sedation.  *Id.*  Dr. Marino expressed the opinion that Plaintiff could occasionally lift and carry less than ten pounds and could rarely lift or carry ten pounds; never twist, stoop, balance, crouch, crawl, or climb; never finger or feel and rarely reach or handle; sit for ten minutes at a time and sit a total of less than two hours in an eight-hour working day; stand for ten minutes at a time and sit a total of less than two hours in an eight-hour working day; and needs to shift positions at will from sitting, standing, or walking.  (Tr. 695.)  He additionally found that Plaintiff needs unscheduled breaks every 15 to 30 minutes for periods of 5 to 10 minutes due to pain, paresthesia, numbness, chronic fatigue, muscle weakness, and side effects of medication; he must use a cane or other assistive device; he must elevate his legs above the waist for four to six hours during an eight-hour workday due to pain, numbness, and swelling; his symptoms would interfere with attention and concentration needed to perform even simple work tasks ten percent

of the workday; he was incapable of "low stress" work; and he would likely miss work or leave early because of his symptoms more than four days a month. (Tr. 696.)

The ALJ found Dr. Marino's opinion regarding Plaintiff's physical functioning "not persuasive." (Tr. 26.) He stated that Dr. Marino's opinion was not supported by an adequate explanation or with discussions of objective evidence, but was instead a "form filled out by checkmarks." *Id.* The ALJ further found that the opinion was not consistent with Dr. Marino's own treatment notes. *Id.* He explained that in September 2022, Dr. Marino noted that Plaintiff was "lost to follow-up." (Tr. 26, 666.) The ALJ stated that Plaintiff's "failure to follow up with his treatment regimen indicates that his symptoms are not as limiting as has been alleged." (Tr. 26.) He also noted that Plaintiff presented to Dr. Marino in September 2022 "for the purpose of having the provider complete disability paperwork." (Tr. 26, 666.) With regard to other evidence, the ALJ stated that Plaintiff reported to "another treatment provider" that he experienced pain relief from cortisone injections and that he experienced low levels of pain. (Tr. 26.) Finally, the ALJ noted that there was "no evidence of deficits in physical functioning such that a cane is medically necessary." *Id.*

Dr. Marino's treatment notes are summarized as follows:

Plaintiff first saw Dr. Marino on June 11, 2020, to establish care. (Tr. 608.) He reported he saw providers in the areas of primary care, neurology, and orthopedic surgery. *Id.* Plaintiff's chronic health problems included obesity, migraines, osteoarthritis, and fibromyalgia, which resulted in chronic pain. *Id.* He also had a history of depression and anxiety. *Id.* Plaintiff was taking pain medications and had recently undergone cortisone injections in his bilateral knees by an orthopedic surgeon. *Id.* His pain was not well-controlled. *Id.* Plaintiff also took medication for his migraines and was awaiting approval for Botox injections. *Id.*

Plaintiff indicated that he would like to lose weight and a referral for pain management. *Id.* On examination, Plaintiff was six feet-two inches tall and weighed 343 pounds; no deformity was noted on musculoskeletal exam; and Plaintiff's mood and behavior were described as "normal." (Tr. 609.)   Dr. Marino diagnosed Plaintiff with morbid obesity, with BMI of 40-49; migraine; generalized osteoarthritis of multiple sites; bilateral chronic knee pain; fibromyalgia; chronic pain syndrome; generalized anxiety disorder; recurrent depressive disorder, in partial remission; chronic neck pain; and history of Rocky Mountain spotted fever.   (Tr. 610.)   Dr. Marino started Plaintiff on medications for weight loss, pain, and migraine treatment. *Id.*   In September 2020, Dr. Marino increased Plaintiff's dosage of Cymbalta[3] due to Plaintiff's reports of increased joint pain and depression.   (Tr. 600-02.)   In February 2020, Dr. Marino prescribed preventative migraine medication at Plaintiff's request, as he reported he was no longer seeing a neurologist for his migraines.   (Tr. 593-94.)   In May of 2021, Plaintiff requested a second opinion regarding his chronic bilateral knee pain, as he reported he had been put off from having knee replacement surgery due to his age and morbid obesity.   (Tr. 574.)   He complained of "worsening pain and decreased activities of daily living due to symptoms."   *Id.*   Plaintiff's pain, sleep, and migraines were not well-controlled.   *Id.*   On examination, Dr. Marino noted tenderness in the bilateral knees, but no deformity.   (Tr. 575.)   He ordered x-rays of the knees and adjusted Plaintiff's medications.   *Id.*   In November of 2021, Dr. Marino noted Plaintiff was overdue for his three-month follow-up.   (Tr. 538.)   Plaintiff reported that his pain was not well-controlled.   *Id.*   Dr. Marino refilled Plaintiff's medications and increased his dosage of Lyrica.[4]

---

[3] Cymbalta is indicated for the treatment of depression, anxiety, and pain caused by nerve damage.   *See* WebMD, http://www.webmd.com/drugs (last visited March 13, 2025).
[4] Lyrica is indicated for the treatment of nerve pain.   *See* WebMD, http://www.webmd.com/drugs (last visited March 13, 2025).

*Id.* On February 28, 2022, Plaintiff presented for follow-up of his "chronic pain requiring narcotics." (Tr. 534.) He complained of uncontrolled pain. *Id.* Dr. Marino discussed with Plaintiff losing weight in order to qualify for surgery, and adjusted his medications. (Tr. 536.) On September 6, 2022, Plaintiff reported for re-evaluation of his various complaints after being "lost to follow-up." (Tr. 666.) He also requested an "administrative document to be filled out regarding his ability to work." *Id.* Dr. Marino stated that Plaintiff "has not been able to hold gainful employment for several years due to worsening pain" and depression, and that this has resulted in "physical and mental disability with restrictions in his range of motion, concentration, focus, [and] strength." *Id.* On musculoskeletal exam, Dr. Marino noted only "no deformity;" he noted depressed mood, flat affect, and tangential speech on psychiatric exam. (Tr 667.)

The only other records cited by the ALJ are those of Susan Jolly, M.D, Plaintiff's orthopedic surgeon. Her records are summarized as follows:

On March 13, 2019, Plaintiff presented to Dr. Jolly with complaints of constant bilateral knee pain, right worse than the left, that has been occurring in a persistent pattern for ten years. (Tr. 427.) Plaintiff had previously undergone laparoscopic surgery on the right knee. *Id.* Plaintiff indicated that his knee pain is aggravated by twisting, squatting, kneeling, climbing stairs, and prolonged standing. *Id.* Plaintiff reported "significant pain and limitations" in daily activities due to his knee pain. *Id.* He stated his knees prevent him from walking any distance, and interfere with sleep. *Id.* On examination, Dr. Jolly noted Plaintiff had an antalgic and painful gait due to knee pain, tenderness in both knees, and limited range of motion of the bilateral knees. (Tr. 430.) He underwent x-rays, which revealed moderate degenerative osteoarthritic change of the bilateral knees, right greater than left. *Id.* Dr. Jolly noted that

Plaintiff had recently started weight loss medication and he would need to continue losing weight to be a candidate for a total knee replacement. *Id.* He had not tried hyaluronic acid injections, and Plaintiff would attempt to get this approved by his insurance company. *Id.* On March 25, 2020, Plaintiff presented for follow-up of bilateral knee pain. (Tr. 506.) Plaintiff was last seen in March 2019, when his insurance company denied hyaluronic acid injections. *Id.* Plaintiff reported that his pain continues to worsen, and it prevented him from working. *Id.* He had cortisone injections in the past with limited benefit. (Tr. 504.) On examination, Dr. Jolly noted medial joint line tenderness of the bilateral knees, and limited range of motion of the bilateral knees. Dr. Jolly ordered x-rays of the knees, which were consistent with moderate degenerative osteoarthritis of the bilateral knees with varus deformity. (Tr. 506.) Dr. Jolly indicated that she would try to get insurance approval for hyaluronic acid injections; if not, she would provide cortisol injections. *Id.* She stated that Plaintiff would need to get his BMI under 40 to proceed with total knee arthroplasty. *Id.* Plaintiff returned for follow-up in June 2020, at which time Dr. Jolly noted decreased and painful range of motion of the bilateral knees. (Tr. 616.) She administered cortisone injections to the bilateral knees. *Id.* In September 2020, Plaintiff reported that the cortisone injections "were helpful" until about three weeks prior to his appointment. (Tr. 619.) He complained of left ankle pain due to an old fracture. *Id.* Dr. Jolly noted decreased range of motion of the bilateral knees on examination. (Tr. 622.) She administered bilateral cortisone injections and referred Plaintiff to a podiatrist for evaluation of his ankle pain. *Id.* In December 2020, Plaintiff reported that the injections seem to help his pain relief at night, but do not last long. (Tr. 628.) He rated his pain as an eight out of ten. *Id.* Plaintiff was interested in surgery, but Dr. Jolly noted that his BMI is over 45 and it must be 40 or less to undergo surgery. *Id.* Plaintiff underwent cortisone injections to the bilateral knees.

*Id.*  In March 2021, Plaintiff reported that the injections are only lasting "a few weeks."  (Tr. 635.)  Dr. Jolly administered cortisone injections to Plaintiff on this date, and again on June 28, 2021.  (Tr. 635, 642.)  On October 7, 2021, Plaintiff reported that his knee pain returned more suddenly after the injections, and wanted to discuss surgery.  (Tr. 647.)  Plaintiff's BMI was 47.1.  *Id.*  Dr. Jolly advised Plaintiff to decrease his weight to 320 pounds and at that point, they could discuss surgery.  *Id.*  Plaintiff reported he was motivated to lose weight with this goal in mind.  *Id.*  Dr. Jolly administered cortisone injections to the bilateral knees.  *Id.*

Plaintiff does not directly argue that the ALJ erred in failing to adopt all of the limitations found by Dr. Marino in his September 2022 opinion or otherwise erred in evaluating the supportability and consistency of Dr. Marino's opinion pursuant to the new regulations.  To the extent Plaintiff challenges the ALJ's evaluation of Dr. Marino's opinion, the Court finds that the ALJ's determination that Dr. Marino's extreme limitations were not explained in his opinion or supported by his findings on examination is supported by substantial evidence.

Plaintiff instead contends that the ALJ's RFC determination is unsupported by substantial evidence because Dr. Marino provided the *only opinion* regarding Plaintiff's physical ability to function in the workplace with his combination of impairments.  The undersigned agrees.

The Court notes that even the state agency medical consultant, Donna McCall, D.O., did not provide an opinion regarding Plaintiff's physical RFC.  On May 22, 2019, Dr. McCall summarized the limited medical evidence available at that time, noting that Plaintiff's March 2019 visit with Dr. Jolly revealed normal strength throughout, and no crepitus, but an altered gait and reduced range of motion of the knee.  (Tr. 143.)  She further noted that imaging revealed a varus deformity in both knees along with moderate degenerative osteoarthritic changes in the

bilateral knees. *Id.* Dr. McCall found that denial of Plaintiff's claim was appropriate based on insufficient evidence. *Id.*

The ALJ found Dr. McCall's opinion "not persuasive," noting that the opinion was "not consistent with the overall medical evidence of record, which is sufficient to adjudicate the claimant's application for disability benefits." (Tr. 25.) He stated that the record provides clinical observations, diagnostic imaging of Plaintiff's knees, observations of Plaintiff's functioning, and statements regarding his compliance with his treatment regimen. (Tr. 25-26.)

As noted by Plaintiff, the Eighth Circuit does "not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed." *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020).

Although substantial evidence supports the ALJ's decision not to include all the limitations found by Dr. Marino, the Court must also consider whether substantial evidence supports the ALJ's finding that Plaintiff could perform the standing and walking requirements of light work. Plaintiff points out that light work requires the ability to stand and/or walk for six hours in an eight-hour workday. *See* S.S.R. 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

The ALJ acknowledged that Plaintiff's obesity, osteoarthritis of the bilateral knees, fibromyalgia, and migraines were severe. He further noted the results of imaging revealed moderate degenerative osteoarthritis of the bilateral knees with varus deformity. Dr. Jolly consistently noted tenderness and limited range of motion of the bilateral knees and on one occasion noted an antalgic gait. Plaintiff regularly complained of knee pain, for which he was

prescribed medication and underwent cortisol injections. The ALJ noted that Plaintiff reported receiving pain relief from cortisone injections. Although Plaintiff did report that the cortisol injections helped with his pain, he also reported that the injections did not eliminate his pain and that the relief was short-lived. The ALJ places much emphasis on the fact that Plaintiff failed to follow-up with Dr. Marino. The fact that Plaintiff was late in following up with Dr. Marino may be one factor detracting from the consistency of Plaintiff's complaints of disability, but it does not establish that Plaintiff was capable of performing the walking and standing requirements of light work.

The ALJ has a duty to sufficiently develop the record to permit meaningful review on appeal. *See, e.g., Noerper,* 964 F.3d at 747. This duty to develop the record "arises from the simple fact that the disability determination process is not an adversarial process," and thus, the duty to develop the record "exists alongside the claimant's burden to prove [their] case." *Id.* Moreover, the ALJ's duty exists even when a claimant is represented by counsel. *Id.* The Eighth Circuit Court of Appeals has "repeatedly recognized this duty," and it has "remanded for further development of the record not only where evidence of functional limitations is lacking, but also where the record presents conflicting medical opinions as to which the Commissioner fails to explain a choice." *Id.*

In *Noerper*, much like the instant case, the ALJ had concluded that the plaintiff retained the ability to stand or walk for six hours in an eight-hour workday, despite complaints of knee pain. On appeal, the majority held that there was no reliable evidence to support that conclusion and remanded for further development regarding the plaintiff's functional limitations on walking and standing. *Noerper*, 964 F.3d at 746. Notably, the report of a non-examining medical consultant supported the six-hour determination in *Noerper,* whereas the state agency medical

Page **18** of **19**

consultant in this case found there was *insufficient evidence* to provide an opinion regarding Plaintiff's limitations.

The undersigned finds that the physical RFC formulated by the ALJ lacks the support of substantial evidence. As such, the Court will reverse and remand this matter to the Commissioner for determination of a new RFC.

Plaintiff also contests the ALJ's mental RFC. Because this matter is being remanded for further development of the record with respect to Plaintiff's physical RFC, the Commissioner should also consider whether to obtain additional evidence regarding Plaintiff's mental RFC.

## Conclusion

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ shall obtain additional evidence regarding Plaintiff's ability to function in the workplace with his combination of impairments, properly evaluate the persuasiveness of the medical opinion evidence, and formulate a mental and physical RFC supported by substantial evidence.

Judgment will be entered separately in favor of Plaintiff in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2025.